Good morning, Your Honor. May it please the Court. My name is David Hsu. I'm representing the petitioner in this case. The immigration judge denied the petitioner's asylum application and the BIA affirmed the decision without opinion. We ask this Court reverse the decision below. The immigration judge's decision is based on Edwards' credibility determination and the record showed that the immigration judge based on his Edwards' credibility determination almost entirely on the difference between the petitioner's testimony and the country condition information in the record. We argue that, first, the petitioner's testimony is actually consistent with the country condition information in the record, and, secondly, even if there is a difference, the difference is not specific in the code and the reason for Edwards' credibility determination. The petitioner testified that he and his wife were urban residents in Fujian Province, China, and his wife was forced to undergo an abortion because they got married before they reached the legal age for marriage and because his wife became pregnant before she came to China. He testified that his wife was taken from their home at night and was detained at a garage for a night, and the next morning she was taken to the local hospital where she was forced to undergo an abortion. At the time of the abortion, she was about more than five months pregnant, and after the abortion, they were imposed a fine of 20,000 RMB for getting married early and having children early, and the petitioner also testified that after the birth of their daughter, the birth control officials went to their home again and demanded one of them to undergo sterilization. Again, they were imposed another fine of 20,000 RMB. Kennedy. That seemed awfully high. One of the findings, I think, by the immigration judge was that the amount of the fine seemed inconsistent with the country reports, even – well, maybe you could address that. Yes, Your Honor. As to the amount of the fine, the immigration judge found the fines, according to the country report, should be 20 to 40 percent of the annual income of the couple. But actually, the country report says on page – the administrative record, page 222, the fine in a town in Fujian province is three times of the couple's annual income. The petitioner testified that their annual income is about 6,000 RMB, and each fine – the fine individually is about three times of that amount. I understand they were fined twice, but each time the fine is roughly three times of their annual income. So I believe the petitioner's testimony is consistent with the country-conditioned information. The country – the State Department's report – country reports shows that the one-child family – one-child-per-family policy is more vigorously implemented in urban areas. In urban areas, a couple seldom get permission to have more than one child. In this case, the petitioner and his wife live in an urban area in Fujian province. And it is also reported that in Fujian province, in the town in Fujian province, the officials, they systematically use coercive measures, such as forced abortion and sterilization, to enforce the family planning policy. And again, this is consistent with what the petitioner testified. And even though the country's report stated that the Consulate General of the United States in China and Guangzhou is not aware of any forced abortions of illegitimate children, or children of couples with an early marriage, like the case in this case, but it also stated in the report that the Consulate General could not exclude the possibility, which is on the record, page 292. Therefore, we believe that the immigration judge finding that petitioner's testimony is inconsistent with country condition information is not supposed by substantial evidence. Secondly, even assuming that there is a difference between petitioner's testimony and the country condition information under the law of this court, such difference is not substantial evidence. It's not specific in the code and the reason for a valid adverse credibility determination. If we rule in your favor, in your client's favor, on the asylum and the withholding of removal claims, what would the remedy be? You Honor, this case, I believe, if the court finds the petitioner credible and the case should be – should not be relitigated back to the BIA, to the Immigration Court, this case should be remanded for the discretionary decision only, not for a new trial for this case. Whether to grant refugee asylum? Yes, Your Honor. So that would be the issue, the only issue that would go back, just the asylum issue? Yes, Your Honor. Your Honor, the government brief also said about the marriage issue of the petitioner. The immigration judge also stated in his opinion that he raised the issue of the marriage, whether petitioner was legally married. But our position is the immigration judge did not actually find that Respondent was not legally married. But even if this is the issue, according to the most recent case of this court, Marr v. Ashcroft, 361 F. 353, husbands whose marriage are not recognized or denied recognition by the Chinese government, by virtue of the birth control program, are still eligible for asylum based on their wife's prosecution, such as a forced abortion. So I believe in this case, petitioner testified they tried to obtain recognition of their marriage after they reached legal age, but they were denied recognition because they did not pay the 20,000 RMB fine at that time. In the government's brief, the government cites the case Machu v. INS for the position that this court should not disturb the immigration judge's reliance on the country condition information. But Machu v. INS is a case not about credibility. It is a case in which the BIA relied on the country condition reports in the record to find that the conditions in Romania have changed so that the presumption of a well-founded fear had been rebutted by the government. But this case, the immigration judge used the country condition information to refute the specific and the detailed testimony of petitioner's testimony regarding persecution. Therefore, this case should be under this court's case, Shah v. INS. It's 220 after 1062. Okay, Mr. Hsu, thank you. Thank you, Your Honor. We'll hear from the government. May it please the Court, Your Honors. My name is Robin Bly. I represent the Attorney General in this matter. This Court and other circuit courts have stated that information in the State Department reports is one of the best resources for conditions in foreign countries. And Mr. Zhang has not provided any evidence to the contrary that compels a finding in his favor. The profile indicates that there's a lack of enforcement in the Fijian province regarding the one-child policy, and it's been criticized in the press in China. But how ñ I have a little trouble with that. We've also said there needs to be an individualized analysis. And in this case, you have specific testimony about what went on, and the country report doesn't rule out at all the circumstances that he's alleging. It says that it's a matter of generalization, as you've just quoted. But that doesn't foreclose the circumstances that they've engaged in, particularly when the IJ really didn't focus on the fact that these ñ this couple, their circumstance is a couple that went through an early marriage and therefore may fall into an area that the country report really doesn't focus on much at all. Well, Your Honor, while it is true that neither of the State Department reports discussed anything about women in early marriages undergoing abortions when they're found to be pregnant, it also didn't rule it out. The ñ and it's ñ the reports were inconsistent ñ Petitioner's testimony was inconsistent with the report, specifically as we pointed out that he ñ they claimed that they were going to be forced to ñ one or the other was required to appear for a sterilization procedure. However, there's nothing in the State Department reports that indicate that both couples ñ both of the couple would have to undergo that. As we pointed out, the immigration judge misspoke when he had pointed and said that both would have to. The evidence of record shows that only one would have to go ñ undergo that procedure. Most likely it would be his wife. And there's nothing in the record to indicate that his wife, who has remained in China this whole time, has been sterilized, and that she was one of the people that ñ I mean, it was a choice of she or her husband to appear for sterilization. And there's nothing to indicate in this record or any testimony that he presented that he ñ that she has been sterilized at this point, which I understand. He may be the one that they're looking for. Well, Your Honor, I believe it was ñ the way the authorities had asked for them was they wanted the wife or the husband. They didn't specify they wanted the husband. So there's nothing that ñ I mean, that would just require us to speculate at this point. I mean, the ñ based on the testimony in the record, he ñ I think it was he who stated that his mother was told when officials came to their house that either he or his wife were going ñ petitioner or his wife were going to have to appear for a sterilization procedure. So does that issue go to asylum, or does it go to withholding or removal of both? Well, Your Honor, I think it would probably go to both. In addition, there's nothing to indicate that he's had one ñ they've had one child, and the ñ it's a daughter from what the record indicates. And the record seems to indicate, at least the country reports seem to indicate, that in the Fijian province where the one-child policy is basically a lot more lax in other areas, that it's very likely that he would be permitted to have a second child to try and have a son if he waited a certain number of years. Well, with the prior abortion, how would that affect that? Well, Your Honor, I mean, it's a little ñ it's unclear how that would affect that. It's unclear on this record why she would have had to undergo that. I mean, he claims it's because of an early marriage, but the immigration judge found him incredible, and so that's the only thing we have to rely on. We have nothing else that really indicates that that would have been the reason. What was the basis for the incredibility finding on the early marriage? Well, he ñ the immigration judge pointed out on page 52 of the record that he wasn't the petitioner was, in fact, married, and if he was not legally married, that he just simply lived with the wife ñ the mother of his child. But the immigration judge went on to consider, well, even if he is married, while his testimony was consistent with the country conditions, there was nothing, as we've indicated before, in the record that indicated that she would have had to undergo this abortion. While the Court has pointed out that there was nothing to indicate that she wouldn't have ñ I mean, there's nothing in this record, either of the profiles or the country reports in this record, that indicate that early marriages, people who are in early marriages, find themselves pregnant, would have to undergo an abortion. Additionally, the Court mentioned the amount of the fines. The immigration judge found the amount of fines ñ Is that a ñ is that a basis for finding lack of credibility, or just he hadn't carried some burden of proof? Well, Your Honor, I think the immigration judge found that he hadn't testified credibly and, therefore, hadn't met his burden of proof. Well, but, I mean, I've asked you why he found them incredible, and you say because there's no evidence in the country report. So ñ Well, Your Honor ñ One way or the other. It's ñ well, it's also ñ How is that a basis for credibility? It's also because he's claiming that he would have to ñ he or his wife would have ñ wife, for lack of a better term, would have to undergo a serialization procedure now. And there's nothing in this record where it indicates that in the province that he's from, that that would necessarily be the case, especially considering the fact that he had a daughter as his first child, and that it's very likely in that province  And as the immigration judge pointed out, the U.S. consulate was unaware of any forced abortions of illegitimate children or children of couples of early marriages. The immigration judge pointed to specific reasons in ñ for his disbelief between Zhang's testimony and the State Department reports, and the discrepancies went to the heart of his claim. Therefore, we'd argue that the ñ the IJ's credibility finding should be sustained. However, if the Court finds that Zhang was credible, the Court must remand for the ñ to the board under Ventura to evaluate his claim for asylum and withholding in the first instance. Are there any further questions? Why would it have to go back on asylum? Well, Your Honor, I think he based it primarily on a credibility finding. So if you find that he's credible, it would have to go back. He didn't make any determination of future persecution, a well-founded fear of future persecution. Right. I understand on that part. But if ñ Which is part of the asylum ñ If we were to conclude that the immigration judge's finding of non-credibility on the asylum side of the equation was not supported by the record, what would we be remanding for? For the board to give its reasons for, I guess, to support that ñ the finding that he's credible, and also to give its reasons for withholding. Because they never remanded it. I thought about it. If we find that it's credible, then you look at the record, and if the record supports contrary finding to the IJ, in other words, if viewing his testimony as credible, does the record support reversing the IJ? Then it's over, isn't it, on asylum? Well, Your Honor, this Court can't sit and just consider it in the first instance. I mean, that would be a ñ But that's what we've said. Well, Your Honor, we would argue that it would go back to the board for them to render their decisions on the ñ based on this Court's directions, finding that he was credible. So what you're saying, the process is that the IJ makes the credibility finding. The BIA pushes this through. We then look at the issue, and because we disagree with the IJ, now the BIA gets to second ñ now gets to exercise its review function. Well, Your Honor, the BIA or the immigration judge, I mean, it depends on what the ñ if it's remanded to the board, then the board can decide the case. It did decide the case. It just affirmed without opinion the immigration judge's decision. So why did they get two bites at the apple? I mean, how many appeals does this have to go through? Well, Your Honor, presumably if the Court finds that he's ñ that he's credible, it will go back. The Court will say, yes, he's credible, and will render a decision. Well, no, no. The IJ or the board has to decide, one, accepting the Petitioner's testimony is credible, right? One, then is he ñ has he made a case of persecution? And secondly, I don't know the state of the record, but sometimes you have the issue of, well, can that be rebutted, right, by changed conditions? Yes. I don't know if that's an issue in this case, but those issues might be open. And then finally, in any event, asylum is an exercise of discretion. Yes. Right? You go back for an exercise of discretion on asylum. That I understand. Petitioners said the same thing. I understood you to say if we found there's not substantial evidence to support the credibility finding as to asylum, the granting of asylum, as whether he's entitled to be considered for the exercise of discretion. Yes. I'm sorry, Your Honor, if I wasn't ñ You should go back, let the BIA then reinforce or re-decide the issue of credibility. No. I'm sorry, Your Honor, if I was unclear. Yeah, that it would go back for the board to exercise its discretion. I'm sorry if I wasn't clear on that, Your Honor. All right. These things are complicated. This is my second Chinese case today. So if there are no further questions, we'll submit the rest. All right. Thank you. All right. Both sides, you used up your time. So this case is now submitted for decision. We thank you for your argument. Our next case on the calendar is Kansberg versus Ashcroft. I'm still not sure what happens on this case. I'm still not real clear.
judges: T.G. Nelson, Tashima, Fisher